IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SHAVONDA LEEANN ROSS and )
KRISTOPHER LOFTON, )
 )
         Plaintiffs, )
 )
v. )   No. CIV-08-1126-L
 )
NATHAN MYERS, individually, )
JASON SKAGGS, individually, )
ANGELO OREFICE, individually, )
J.D. REID, individually, and THE )
CITY OF BETHANY, OKLAHOMA, )
a municipal corporation, )
 )
         Defendants. )

## O R D E R

Plaintiffs filed this action seeking damages from the City of Bethany, Oklahoma ("the City") and four of its police officers for alleged constitutional violations that occurred after the stop of plaintiffs' vehicle on May 28, 2008. Plaintiffs allege the seizure of their persons and the subsequent search of their vehicle violated the Fourth and Fourteenth Amendment guarantees against unreasonable searches and seizures. They also assert due process and equal protection claims, as well as state law claims for negligence, assault, and false imprisonment.

This matter is before the court on defendants' motion for summary judgment. Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

     The undisputed facts establish that at approximately 6:00 p.m. on May 28, 2008, defendant Nathan Myers, who is currently employed as a police officer with the City, was dispatched to an apartment complex in Bethany on a stolen vehicle complaint. Exhibit A-3 to Defendants' Brief in Support of Motion for Summary

Judgment at 1 ("Defendants' Brief"). He interviewed the car's owner who informed him that her 1995 Ford Taurus had been taken from the parking lot of the apartment complex without her permission. Myers keyed the stolen vehicle's information into his in-car computer; the information was then entered into the National Crime Information Center ("NCIC") database by Kyle Hayes, a communications specialist with the City. Myers concluded his investigation at 6:47 p.m. and continued on patrol. Shortly thereafter, Myers was at the corner of N.W. 19th and Peniel when plaintiffs' 2006 Dodge Caravan drove past. Myers ran the license plate through his computer;[1] he received the registration information as he proceeded westbound on N.W. 19th. Sworn Declaration of Nathan Myers at ¶ 5. Approximately two minutes later, his in-car computer[2] gave an audible alert and displayed a red stolen flag indicator at the top of the screen, which indicated plaintiffs' van had been reported stolen. Exhibit A-4 to Defendants' Brief. The screen also showed plaintiff Shavonda L. Ross as the registered owner of the vehicle. Id.

---

[1] Myers asserts he "routinely run[s] the license plates of vehicles to check for registration errors, expiration dates, and stolen vehicles." Sworn Declaration of Nathan Myers at ¶ 16. Plaintiffs deny Myers routinely makes such checks, but offer no evidence in support of their denial.

[2] The in-car computer system used by City police officers is linked into the Oklahoma Law Enforcement Telecommunications System, the National Law Enforcement Telecommunications System, and NCIC through a network that the Oklahoma County Sheriff's Office operates. Vehicle information, such as the registered owner, is received from the State of Oklahoma Vehicle Registration Database. The federal government maintains the NCIC database, but information is submitted and removed by local, state, and federal agencies. If the City takes a stolen vehicle report, it submits the information to NCIC for addition to the database, where it can be accessed nationwide. When a vehicle is recovered, it is the originating agency's responsibility to notify NCIC so information listing the vehicle as stolen can be removed from the database. Sworn Declaration of Nathan Myers at ¶ 7.

Myers advised officers in the area of the alleged stolen vehicle and its last known location. Defendant Jason Scaggs advised that he had located the car in the 6600 block of N.W. 16th, a high crime area known for gangs, drugs and violence.[3] Sworn Declaration of Jason Scaggs at ¶ 4. Myers proceeded to the area, at which time Myers and Scaggs initiated procedures for a felony stop. Felony stop procedures direct that officers draw their firearms as they approach a stopped vehicle. Once they reach the vehicle, the officers – with firearms still drawn – direct each person in the car to exit with hands in the air, at which time the former occupants are directed to lie face down until handcuffs are secured. Sworn Declaration of Nathan Myers at ¶ 9. Pursuant to this procedure, plaintiffs were ordered out of the car at gunpoint, forced to lie on the ground, and then handcuffed behind their backs.[4] Id. at ¶ 10. Defendant J.D. Reid arrived after the stop was initiated; plaintiffs had been handcuffed by the time defendant Angelo Orefice arrived at the scene. Orefice was only present for a matter of minutes, but during that time he searched under the front passenger seat, between the middle seat and the middle console, and in the glove box to look "for any offensive weapons." Sworn Declaration of Angelo Orefice at ¶ 6. No weapons were found. Id.

---

[3]Plaintiffs deny "that this area or any area of Bethany, Oklahoma is a high crime area" but provide no evidence to support their denial.

[4]Although the procedure requires removal of all occupants of a vehicle, the officers did not remove plaintiffs' one-year-old daughter from her car seat. She remained in the van throughout plaintiffs' detention.

4

After plaintiffs were handcuffed, Myers was advised by dispatch that the NCIC database did not show plaintiffs' vehicle as stolen. Sworn Declaration of Nathan Myers at ¶ 11. Although Myers' in-car computer continued to reflect plaintiffs' car as stolen, a further check of the database indicated that the NCIC stolen vehicle hit was actually for the 1995 Ford Taurus that had been uploaded to the database minutes before Myers ran plaintiffs' tag. Id. Once Myers received confirmation that the stolen vehicle hit was a mistake, the officers removed the handcuffs from plaintiffs. The entire incident lasted approximately 10 minutes. *See* Exhibit A-5 to Defendants' Brief at 1.

Plaintiffs first challenge the constitutionality of the seizure of their persons and the search of their vehicle while they were detained.[5] In addition, plaintiffs contend the officers stopped their vehicle based on racial profiling, which they argue constitutes a substantive due process violation. Plaintiffs also assert an equal protection violation based on the City's failure to discipline the officers, and contend the City is liable because it failed to properly train its officers. Defendants counter that the stop, seizure, and search were constitutionally permissible and, even if not, the individual defendants are entitled to qualified immunity.[6]

---

[5]Based on their allegations of racial profiling, it is unclear whether plaintiffs contest the validity of the stop. The court therefore must also address that question.

[6]As a municipality, the City, of course, is not entitled to assert the defense of qualified immunity. Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1278 (10th Cir. 2009).

In assessing plaintiffs' constitutional claims, the first question the court must determine is "whether the plaintiff 'has asserted a violation of a constitutional right at all.'" Liebson v. New Mexico Corrections Dep't, 73 F.3d 274, 276 (10th Cir. 1996) (*quoting* Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  It is only if the court finds plaintiffs have asserted the violation of such a right that the court addresses the qualified immunity question:  was that right was clearly established at the time of the alleged violation?  Liebson, 73 F.3d at 276.

The Fourth Amendment protects the public against unreasonable searches and seizures.  "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."  United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995), *cert. denied*, 518 U.S. 1007 (1996).  Likewise a traffic stop can be initiated "if the officer's action is supported by reasonable suspicion to believe that criminal activity '"may be afoot."'"  United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations omitted).

> The Supreme Court has emphasized that, in determining whether an investigatory stop is supported by reasonable suspicion, courts must "'look at the totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."  The evaluation is made from the perspective of the reasonable *officer*, not the reasonable *person*.  Officers must be permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative

> information available to them that 'might well elude an untrained person.'"

United States v. Quintana-Garcia, 343 F.3d 1266, 1270 (10th Cir. 2003) (citations omitted) (emphasis in original). During a valid traffic stop, a police officer may order both the driver and any passengers to exit the vehicle without violating the Fourth Amendment. Maryland v. Wilson, 519 U.S. 408, 410 (1997). A search of the car without a warrant, however, is "*per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 129 S. Ct. 1710, 1716 (2009). A search incident to a lawful arrest is one of the exceptions to the warrant requirement. This exception, however,

> authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. . . . [C]ircumstances unique to the vehicle context [also] justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence.

Id. at 1719 (footnote and citations omitted).

With these standards in mind, the court finds the initial stop of plaintiffs' vehicle was valid. At the time he initiated the stop, Myers had reasonably reliable information that the car plaintiffs were driving had been reported stolen. That the NCIC report was erroneous does not negate the officers' good faith reliance on it. Likewise, the officers' ordering plaintiffs to exit the vehicle and handcuffing them

once they were removed was reasonable under the circumstances. *See* United States v. Holt, 264 F.3d 1215, 1223 (10th Cir. 2001) (*en banc*). Plaintiffs' detention occurred in a high-crime area and was of limited duration. Plaintiffs were immediately released from the handcuffs once Myers confirmed the mistaken NCIC hit. The court thus finds no Fourth Amendment violation in either the stop of plaintiffs' vehicle or the seizure of their persons.

The search of the car by Orefice,[7] however, does constitute a Fourth Amendment violation. Defendants downplay Orefice's search of the van as only "a cursory check". Defendants' Brief at 14. Orefice, however, did not perform a simple visual check of the vehicle from outside to see if anything incriminating was in plain view; rather, he entered the car and looked under the front passenger seat, between seats, and inside the glove box. This does not constitute a "cursory check". Moreover, Orefice had no reasonably articulable suspicion that plaintiffs' car contained weapons or other contraband or would contain evidence showing the vehicle to be stolen. Orefice and the City attempt to justify the search as incident to plaintiffs' arrest. It was not. There is no evidence that plaintiffs were ever arrested.[8] In fact, the City's policy requires officers to place stolen vehicle suspects

---

[7] The undisputed evidence establishes that Orefice was the only officer who searched plaintiffs' vehicle. To the extent plaintiffs bring this claim against Myers, Scaggs, and Reid, those defendants are entitled to summary judgment in their favor since they had no personal involvement in the alleged unconstitutional search. *See* Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008).

[8] The fact that plaintiffs were handcuffed is not determinative. As the Court of Appeals for the Tenth Circuit has noted,

into "*investigative detention* upon notification of a stolen vehicle." Exhibit 8 to Plaintiffs' Response to Defendants' Motion for Summary Judgment at 2 (emphasis added). A custodial arrest does not occur until "after the stolen vehicle is confirmed through NCIC." Id. In this case, the status of plaintiffs' car as a stolen vehicle was *not* confirmed through NCIC; rather, the opposite occurred, and plaintiffs were then immediately released. As Orefice has not demonstrated any other exception to the warrant requirement, he is not entitled to judgment in his favor on the warrantless search claim. The court's finding that plaintiffs were not under arrest also vitiates the qualified immunity defense as to this claim. At the time the search was conducted, the law clearly required a vehicle search be supported by a warrant, consent, or probable cause, or be pursuant to an arrest or an inventory. That the law regarding search incident to an arrest may have been unclear[9] does not negate the fact that an arrest must have occurred before the exception applies.

---

> converting a Terry detention, which by its terms precludes the suspect from leaving the scene, to an arrest every time an officer uses handcuffs and conducts a "high-risk traffic stop" would conflict with our court's longstanding recognition that the police face a real threat of danger every time they stop a vehicle. *See, e.g., United States v. Holt*, 264 F.3d 1215, 1222 (10th Cir.2001) (*en banc*) (stating that "[t]he Supreme Court has found it 'too plain for argument' that the government's interest in officer safety is 'both legitimate and weighty,' given the 'inordinate risks confronting an officer as he approaches a person seated in an automobile' ").

United States v. Hodges, 215 Fed. Appx. 737, 745 (10th Cir. 2007) (unpublished).

[9] *See* Gant, 129 S. Ct. at 1723 n.11.

9

The City, however, is entitled to summary judgment on this claim as plaintiffs failed to demonstrate an affirmative link between the constitutional violation and a policy or custom of the City. *See* Meade v. Grubbs, 841 F.2d 1512, 1527-28 (1988). To meet their burden of proof, plaintiffs must show not only that the City of Bethany established such unconstitutional policies or customs, but also that these policies or customs caused the deprivation of their constitutional rights. *See* City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985). Plaintiffs, however, have failed to articulate *any* policy or custom that was a moving force behind the warrantless search conducted by Orefice. This is fatal to their warrantless search claim against the City.

Plaintiffs' substantive due process and equal protections claim fail as well. The substantive due process claim is based on the officers' allegedly racially selective law enforcement. That claim, however, is more appropriately brought under the Equal Protection Clause. *See* Whren v. United States, 517 U.S. 806, 813 (1996); Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003). There are thus two components to plaintiffs' equal protection claim: first, that they were subjected to selective law enforcement when Myers ran a check on their tag and second, that the City failed to discipline the officers for their use of force against plaintiffs. While there is no doubt that "[r]acially selective law enforcement violates this nation's constitutional values at the most fundamental level",[10] plaintiffs asserting such claims must make a "substantial threshold showing" that "the defendant's

---

[10] Marshall, 345 F.3d at 1167.

actions had a discriminatory effect and were motivated by a discriminatory purpose." Marshall, 345 F.3d at 1167, 1168.  Plaintiffs have made no such showing in this case.  Plaintiffs' only evidence in support of their claim of racial profiling is that "Myers made direct eye contact with Plaintiff Lofton prior to making his decision to enter his license plate into his computer"[11] and that Myers "randomly blurted out 'black female driver'"[12] when he described the vehicle.  This is simply insufficient.  Plaintiffs have presented no statistical evidence of racially discriminatory traffic stops by Bethany police officers.  Nor, unlike in Marshall, have plaintiffs introduced any evidence that Myers' followed plaintiffs' vehicle after the alleged eye contact was made, that the reason given for stopping the vehicle was pretextual, or that Myers or any other officer made racially tinged comments to either plaintiff.  *See* Marshall, 345 F.3d at 1168-70.

> Broad discretion has been vested in executive branch officials to determine when to prosecute, and by analogy, when to conduct a traffic stop or initiate an arrest.  Police officers and departments should not lightly be put to the expense and risk of trial on charges of racial discrimination that may be easy to make and difficult to disprove. . . . Perhaps for these reasons, the Supreme Court has held that "to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'"  Claims of racially

---

[11]Plaintiffs' Response to Defendants' Motion for Summary Judgment at 11-12.

[12]Id. at 12.  The fact that Myers referred to the driver of the vehicle as a black "female" indicates he did not get a good look at the occupants of the van, as it is undisputed the driver was male.

11

> discriminatory traffic stops and arrests should be held to a similarly high standard.

Marshall, 345 F.3d at 1167 (citations omitted). As plaintiffs have not met this high standard, defendants are entitled to summary judgment on this aspect of plaintiffs' equal protection claim.

Likewise, summary judgment is appropriate on the failure to discipline claim. In this claim, plaintiffs argue that the officers' show of force during the traffic stop constitutes assault and battery and the City has "failed to state any rational basis for its failure to discipline and to present its officers for prosecution for their assault and battery upon the Plaintiffs." Plaintiffs' Response to Defendants' Motion for Summary Judgment at 13. Plaintiffs have not demonstrated how this allegation, even if true, constitutes a violation of the Equal Protection Clause.

Plaintiffs also have failed to establish a claim against the City for failure to train. In this claim, plaintiffs assert the City's "training is inadequate because it teaches the officers to use firearms in all felony traffic stops, whether the persons stopped are acting in a manner that would cause officers to fear for their personal safety or not." Id. at 15.

> In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a plaintiff must first prove the training was in fact inadequate, and then satisfy the following requirements:
>
> > (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring

> situation in which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

Brown v. Gray, 227 F.3d 1278, 1286 (10th Cir. 2000) (*quoting* Allen v. Muskogee, 119 F.3d 837, 841-42 (10th Cir. 1997)).  The court finds plaintiffs cannot establish the first element of the failure to train test because the officers' *show* of force does not constitute excessive force.  While it is undisputed that the officers had their weapons drawn when they approached the vehicle and ordered plaintiffs out of the van, there is no evidence that the officers used any force, much less excessive force, on either plaintiff.  The City is entitled to summary judgment on this claim.

Finally, the court finds plaintiffs' state law claims for negligence, assault, and false imprisonment fail.  Under the Oklahoma Governmental Tort Claims Act, governmental employees are immune from suit for torts they commit while acting within the scope of their employment.  51 O.S. § 152.1(A).  Plaintiffs argue the officers are not entitled to immunity under the Act because the "officers were not acting within the scope of their employment when they engaged in racial profiling and committed assault and battery against Plaintiffs and falsely imprisoned them." Plaintiffs' Response to Defendants' Motion for Summary Judgment at 16.  This argument, however, assumes that plaintiffs can sustain their constitutional claims against the officers, which – with the limited exception of the search by Orefice – the

court has found they cannot do.[13]  Plaintiffs have presented no evidence that any of the officers acted with malice or without good faith; they are thus entitled to the protection afforded by the Governmental Tort Claims Act.

In sum, based on the analysis contained above, the court grants summary judgment in favor of defendants Myers, Skaggs, Reid, and the City on all claims presented by plaintiffs.  Summary judgment is likewise granted in favor of defendant Orefice on all claims except plaintiffs' unlawful search claim.  That claim remains for trial against Orefice solely in his individual capacity.  Defendants' Motion for Summary Judgment (Doc. No. 20) is therefore GRANTED in part and DENIED in part.

It is so ordered this 28th day of July, 2009.

*Tim Leonard*
TIM LEONARD
United States District Judge

---

[13] Plaintiffs do not base any of the tort claims on the allegedly unlawful search.